TONY WILLIS on behalf of himself
and the HEIRS OF AMELIA VA, Plaintiff

v.

FAI'IVAE GALEA'I and FAI'IVAE FAMILY, TO'OMATA
M.T. TUITELE, CHIEFS OF LEONE VILLAGE, SUAPA'IA
ANETERE'A, PIO LE'OSO and SE'E LE'OSO, Defendants

SA'AGA LEVI on behalf of himself and the
HEIRS OF AFELE LEVI, Plaintiff/Intervenor

WILLIAM AH KUOI, Defendant/Intervenor

PAT M. GALEA'I, Defendant/Intervenor

OLO LETULI, Defendant/Intervenor

SUAFO'A VELIO, Defendant/Intervenor

PIO SAGOTE on behalf of himself and the
SAGOTE FAMILY, Defendant/Intervenor

PULETU M. MEREDITH, Defendant/Intervenor

TAELEIFI MANE, Defendant/Intervenor

ROMAN CATHOLIC DIOCESE OF SAMOA-PAGO PAGO,
Intervenor

LE'OSO A. RIPLEY on behalf of the
LE'OSO FAMILY, Defendant/Intervenor

179

LE‘OSO A. RIPLEY on behalf of the
Estate of EDWARD RIPLEY, Defendant/Intervenor

TONY WILLIS and VAETOIFAGA D. ASUEGA
on behalf of themselves and the
HEIRS OF AMELIA VA, Plaintiffs/Objectors

v.

FAI‘IVAE FAMILY and MALUOLEFALE P. SALAVE‘A,
Claimants/Defendants

TO‘OMATA M.T. TUITELE, AVEGALIO FAMILY,
LE‘ALAIALOA FAMILY, AIGAMAUA FAMILY, CHIEFS AND
TALKING CHIEFS OF LEONE, FAI‘IVAE GALEA‘I,
TAELEIFI A. RIPLEY, and FAILAUTUSI AVEGALIO,
Plaintiffs/Objectors

v.

DOROTHY V. ASUEGA on behalf of the
HEIRS OF AMELIA VA TALAMAIVAO, Defendant/Claimant

TONY WILLIS, Plaintiff

v.

SU‘A of the Village of Auma, ETUALE & SONS of the
Village of Auma, and DOES I through X, Defendants

TUITELELEAPAGA NAPOLEONE, Plaintiff

v.

TONY WILLIS, Defendant

LUCY UO AH CHING, EUGENE UO, EDWARD UO, and
EMILE UO for the UO FAMILY, Plaintiffs

v.

AMOS GALEA‘I and FAI‘IVAE GALEA‘I, Defendants

180

High Court of American Samoa
Land & Titles Division

LT No. 45-81
LT No. 45-82
LT No. 08-84
LT No. 22-86
LT No. 06-87

December 14, 1990

Before REES, Associate Justice, and MATA'UTIA, Associate Judge.

Counsel: For heirs of Amelia Va and Diocese of Samoa-Pago Pago,
Charles V. Ala'ilima
For Amos and Fai'ivae Galea'i and Fai'ivae family, Fai'ivae A.
Galea'i
For To'omata and Suapa'ia, Tau'ese P.F. Sunia
For Pio Le'oso, Se'e Le'oso, and Le'oso A. Ripley, Arthur
Ripley Jr.
For William Ah Kuoi, Lucy Uo Ah Ching, Eugene Uo, Edward
Uo, and Uo and Iuli families, Gata E. Gurr
For Olo, Suafo'a, Avegalio family, Aigamaua family, and
Le'alaialoa family, Aitofele T. Sunia
For Puletu, Isa-Lei F. Iuli
Taeleifi pro se
For Failautusi Avegalio, Asaua Fuimaono
For Tuiteleleapaga, Tautai A.F. Fa'alevao

On Motions for New Trial, Reconsideration, Clarification, and/or Amendment of Judgment:

Six parties moved for new trial, reconsideration, clarification, and/or amendment of the judgment in these consolidated cases. The Tuiteleleapaga motion was heard on November 29, 1990. The Willis/Va, Diocese, Taeleifi, and Iuli motions were heard on December 5, 1990. The hearing on the Le'oso motion was postponed, by stipulation among the three parties affected by that motion, until an unspecified date in January 1991.

The assignments of error have overwhelmingly to do with our findings of fact. We reiterate these findings for the reasons stated in our original opinion and for such additional reasons as were stated from the bench in the November 29 and December 5 hearings, with the following exceptions:

1) The small section of the old registered survey of Mrs. Thomas Meredith, which is east of the present road and outside the recent Puletu survey, belongs to Tuiteleleapaga. Although we are bound by law to find that this section did belong to Mrs. Thomas Meredith at the time it was registered, it was not claimed by Puletu Meredith, and no other heir of Mrs. Thomas Meredith appeared to present evidence of occupation by Meredith heirs. There was, however, credible evidence of continuous occupation under a claim of right by Tuiteleleapaga family members since before 1962, the applicable date for adverse possession. (This section has been marked in red as "P-5" on the copy of Exhibit 21 on display in the Clerk's office.)

2) Edward Ripley was not "a foreigner married to a member of the Leoso family," as we stated on page 10 of our original opinion. He was part Samoan, the son of a papalagi man and a Samoan woman, and according to counsel for the Ripley and Le'oso families, Edward himself was a blood member of the Le'oso family through his mother. (This correction tends to strengthen the inference we drew from the relationship of Ripley to the Le'oso family, which is that the designation "Le'oso" as the northern neighbor on the 1915 Uo survey can be read to apply to the tract later registered as individual property of Edward Ripley as well as to the adjoining tract claimed by the Le'oso family.)

We also offer the following "clarifications" or additional observations:

182

1) Counsel for the Willis/Va plaintiffs suggests that all the land within the massive survey offered for registration by Tony Willis in LT No. 45-82, and not proved to be the property of any other party, must be registered as the land of the heirs of Va. Contrary to plaintiffs' argument, this has never been held to be required by the registration statute. Although it is true that an offer of registration to which no one objects is automatically registered as the property of the claimant, the situation changes dramatically when there are objections and these objections give rise to a court case. The court listens to the evidence from all parties and gives judgment in accordance with the evidence. In general, each party presents at least some credible evidence to support its claim and the Court decides in favor of the party whose evidence is most convincing. If, however, no party meets even this minimal burden, "the action should be dismissed without prejudice to the rights of either party." *Tuia v. Salave'a*, 3 A.S.R.2d 1, 3 (1986).

Because plaintiffs press this point, we find it necessary to state explicitly what we said between the lines in our original opinion: the testimony that the Va heirs, after being awarded only a one-third interest in the back half of "the flat land" within this valley in 1906 and 1918, nevertheless proceeded to occupy and cultivate the extensive slopes surrounding the valley on the east, west, and north, was not credible. There was, on the other hand, credible evidence of historic occupation of areas within these slopes by Taeleifi, Tuiteleleapaga, Avegalio, and other families, including most of the families whose names are inscribed in these areas on the original 1906 Talamaivao survey. For the most part, however, these families did not survey their claims on the slopes, except those immediately adjoining the flat land. We therefore find the evidence insufficient to support a judgment that particular areas on the surrounding slopes belong to particular parties, except as detailed in our original opinion. The evidence offered by the various objectors and intervenors was, however, more than sufficient to defeat any claim by the Willis/Va plaintiffs with respect to the surrounding slopes.

2) As the Willis/Va plaintiffs point out, there is only one western tributary stream within this valley. The testimony of the witness Fai'ivae in the 1906 case, whom we found to have been apparently disinterested with respect to this area, was that this western stream formed the western boundary of the "flat land" comprising Legaoa. For most of its course the stream is in fact within a few feet one way or the other of the western edge of the flat land. It has long been recognized as the western boundary by all parties other than the Va heirs, including the Va heirs' cotenant, To'omata, who seems to have been the principal

183

occupant of the area just to the east of the stream. In any event, the best evidence is that the area west of the stream has been occupied by its present occupants since well before 1962, the applicable date for adverse possession.

Oddly, plaintiffs do seem to recognize the western stream as their western boundary in the mountainous area to the north --- the area still claimed by plaintiffs despite the contrary findings and conclusions in *Leuma v. Willis*, 1 A.S.R.2d 48 (1980), which they are collaterally estopped to deny --- but cease to recognize the stream as a boundary once it descends into the flat land. This is exactly the opposite of what the quoted 1906 testimony said and of what the evidence of occupation tends to show.

3) Both Su'a and the Diocese recognize that the boundary between them is the center line of a stream. The court reaffirms this understanding. Each party should check its survey to make sure that it conforms exactly to this boundary.

4) As has been frequently observed by Taeleifi Mane, who is representing the Taeleifi family *pro se* in this proceeding, the land "Tiafau" held to be the property of the Tuiteleleapaga family is not all the land called "Tiafau" in this area. Taeleifi also owns land called Tiafau. (It appears that in 1906 Avegalio may also have claimed some land called Tiafau; this land may or may not be the same as the land the Avegalio family now calls "Laloafu" ("below the waterfall").

5) The parties who were held to own land within the survey offered for registration in LT No. 45-82 and who were either claimants or objectors in that case will be entitled to have these lands registered when this judgment becomes final. The LT No. 45-82 survey includes *all* the land adjudicated to be the property of the various parties in these cases, *with the following exceptions*: (1) the Tuiteleleapaga land called "Punaloa"; (2) the small strips of land adjacent to the Meredith survey held to be the land of Puletu; (3) all but the northernmost tip of the land held to belong to Suafo'a; and (4) some areas along the southern and eastern boundaries of the southern Su'a survey ("Solo"). *See* "Court's Illustration of Decision," the composite map we composed from a copy of Plaintiffs' Exhibit 1.

Although the four areas outside the survey that was offered for registration in LT No. 45-82 may not be registered until their owners have complied with the statutory requirements set forth in A.S.C.A. §

37.0101 et seq., our decision with respect to ownership of these four parcels is binding on all parties to these consolidated cases. All parties to these cases are therefore estopped from objecting to an offer of registration of any of these four tracts by the party held to be its owner. Because everyone in the neighborhood seems to be a party to these cases, registration should be a relatively simple matter.

The Meredith, Uo, Ripley, and Diocese tracts are also wholly or partly outside the original survey that was offered for registration in LT No. 45-82. Because these tracts have already been legally registered, however, there is no need for their owners to re-register them. Resurveys consistent with this opinion may, of course, be added to the appropriate files in the Territorial Registrar's Office consistent with the rules governing that office. The Court is willing to certify such resurveys as complying with the Court's decision, upon proper showing made pursuant to a post-trial motion.

6) Finally, the Court reiterates its warning to Iuli, Tuiteleleapaga, Avegalio, Su'a, and Olo that their surveys are apparently in need of minor correction to eliminate unintended overlaps with neighboring landowners. The northern Iuli survey map seems to place the tract about 200 feet south of its actual location on the ground. The Avegalio, Tuiteleleapaga, Su'a, and Olo surveys, all in the northern part of the land involved in this case, show far smaller overlaps with neighboring surveys. These problems apparently have nothing to do with the pins, etc., actually placed in the ground by the surveyors, which appear to be where the neighboring landowners have agreed that they should be. Rather, slight errors appear to have been made in the calculation of the point of beginning (P.O.B.) co-ordinates or in one or more of the bounds or angles copied onto the survey maps. These surveys should not be registered until the problems have been corrected. Again, the Court will certify compliance with its decision upon a proper showing.

*Conclusion*

The motions for reconsideration, new trial, clarification, and/or amendment of judgment (except the motion by Le'oso) are in all other respects denied. The parties whose motions have been denied, in whole or in part, have ten days from today to file any notice of appeal. *See* A.S.C.A. § 43.0802(b).

The judgment originally entered in these consolidated cases will be modified by the addition of parcel "P-5", as described above, to the land awarded to Tuiteleleapaga.

The judgment may be further amended at a later date insofar as is consistent with our decision on the pending motion for new trial by Le'oso.

It is so ordered.